STATE OF MAINE                                    SUPERIOR COURT
                                                  AMH  ̇  ̇  ̇ — 6/2/2008

Penobscot, ss.

BRUCE MANN

                    Petitioner

         v.                                Docket No. PEN-CR-05-541

STATE OF MAINE                          ┌─────────────────────────┐
                                        │  FILED & ENTERED        │
                                        │  SUPERIOR COURT         │
                    Respondent          │    JUN 02 2008          │
                                        │                         │
         ORDER AND JUDGMENT             │  PENOBSCOT COUNTY       │
                                        └─────────────────────────┘

        This post-conviction review proceeding, brought under 15 M.R.S. §§ 2121 *et seq.*,

came before the court for an evidentiary hearing May 19, 2008.   Petitioner Bruce Mann

and his counsel, William Pagnano, were present, as was the State's attorney, Assistant

Attorney General Lisa Marchese.   The hearing was recorded.

        Based on the entire record, the court hereby adopts the following findings of fact

and conclusions of law, and renders judgment as set forth below.

                              Procedural History

        In the underlying case, *State v. Mann,* Me. Super. Ct., Pen. Cty. Docket No. PEN-

CR-02-040, was charged with manslaughter, a Class A offense *see* 17-A M.R.S. §

203(1)(A), in connection with the death of Jack Sears.    The case went to jury trial before

Justice Mead in September 2002.   Attorney Stephen Smith represented Petitioner at trial

and during the subsequent appeal.   The jury found the Petitioner guilty of

manslaughter, and he later received a sentence of 14 years, all but nine years

suspended, six years' probation. On direct appeal, the Law Court upheld his conviction. *State v. Mann*, 2005 ME 25, ¶ 10, 868 A.2d 183, 186.

As amended, the petition seeks post-conviction relief based on the basis of ineffective assistance of trial at the pretrial, trial, sentencing and appeal phases of the case. Initially, the amended petition, dated November 28, 2005, alleged eight grounds for relief that, for purposes of this order, will be referred to in terms of numbered paragraphs of the amended petition: 1(a) and (b), 2(a) and (b), 3(a) and (b) and 4(a) and (b). In a later filing, Petitioner withdrew the allegations in paragraphs 2(b) and 3(b), but the grounds for relief contained in the other six paragraphs remain pending and addressed below.

The State filed a motion to dismiss, or in the alternative, answer to the amended petition, dated January 7, 2006. The State moved to dismiss seven of the eight stated grounds for relief for lack of specificity or for failing to state a claim, in effect, but did not move to dismiss the grounds for relief reflected in paragraph 4(b).

The Court issued a conditional order of dismissal dated February 22, 2006, directing Petitioner to provide additional details in support of his allegations in all eight paragraphs, or suffer dismissal of those allegations. In response, Petitioner made a supplemental filing dated April 15, 2006, outlining what amounts to an offer of proof.

In a further order dated December 19, 2006, the court addressed the Petitioner's supplemental filing and confirmed the dismissal of all eight grounds. However, the same order also indicated that the petition would be "scheduled for hearing upon the remaining valid grounds."

2

Thereafter, the petition was re-assigned in light of Justice Mead's elevation to the Supreme Judicial Court of Maine. A scheduling discussion revealed uncertainty as to the posture of the case.

The State's view was that the petition had been dismissed, or should have been, and that any further action by the court should consist of dismissing the petition. Petitioner argued for an opportunity to present evidence in support of his request. He argued that, as a matter of due process, his petition should not be dismissed without an opportunity to present actual evidence.

Without necessarily adopting the Petitioner's due process argument, and based in part on the reference in the December 2006 hearing to the matter being scheduled for further hearing, I elected to convene an evidentiary hearing at which the Petitioner would be given the opportunity to present his own and others' testimony in support of the grounds set forth in the amended petition.

After being advised of that plan, the State requested an opportunity to renew its motion to dismiss at the close of that hearing without being called on to present its evidentiary case in chief at that time. In support of its request, the State pointed out that its concerns about lack of specificity in the alleged grounds for relief had not been cured, and that it was entitled to know the specific basis for each ground before being called to respond with its own witnesses. The request was granted without objection.

Thus it was that the hearing held May 19, 2008 evolved into an opportunity for the Petitioner to support his allegations with evidence, and for the State to test the

3

sufficiency of the Petitioner's evidence by arguing for dismissal before presenting its responsive evidence.

At the hearing, Petitioner presented his own testimony and that of three other witnesses: Victor Kraft, a private investigator who worked on Petitioner's behalf before the trial; Mary Ellen O'Connell, a former domestic partner of Petitioner with whom he has two children, and attorney Smith. Each witness was cross-examined by the State.

Through counsel, he also made an offer of proof on the grounds for relief not addressed in the evidence: that offer was essentially a recap of the offer made in his April 2006 filing. After Petitioner had presented all of his evidence, the State renewed its motion to dismiss, and both counsel presented argument. No post-hearing briefing was requested by the court or parties.

### Legal Framework

Some discussion of the standard by which the sufficiency of the Petitioner's evidence is assessed is in order. Ordinarily, a motion to dismiss made before trial, or after the State or a plaintiff has rested in a jury trial, calls for the court to decide whether the State's or plaintiff's evidence, viewed in a light most favorable to the State or the plaintiff, could support a decision in the State's or plaintiff's favor.

Because this is a jury-waived proceeding and because the Petitioner in fact presented what amounts to his case-in-chief at the May 19 hearing, the better analogy is to a motion for judgment made in a jury-waived proceeding under M.R. Civ. P. 50(d). Under that rule, a motion for judgment raises the question whether, assuming the party that bears the ultimate burden of persuasion has presented all of its evidence on the

4

issues raised in the motion, the moving party is entitled to judgment based on the failure of the evidence to sustain the non-moving party's burden.

The evidence is not viewed in a light most favorable to either party; instead the court, acting as trier of fact, simply decides, assuming the party with the burden of persuasion has been fully heard, whether that party's evidence is sufficient to meet that burden. If so, the trial continues. If not, the trial ends, it being a waste of judicial and party resources to prolong a proceeding in which the outcome is already clear.

With regard to the areas covered in Petitioner's offer of proof, this court assumes that Petitioner could and would present the evidence described in the offer at a future hearing. The question is, assuming that evidence were presented, would it, considered along with the evidence Petitioner did present May 19, suffice to meet his burden of persuasion.

The State's position is that, on its face, Petitioner's evidence—both that presented at hearing and that described in his offer of proof--does not meet his burden to prove ineffective assistance of counsel. Petitioner disagrees. The question for the court is whether the State is entitled to judgment based on Petitioner's evidence and offer of proof at the May 19, 2008 evidentiary hearing. If so, the petition must be dismissed. If not, the hearing continues.

Because the proceeding involved the presentation of evidence beyond what was before the court in December 2006, the rulings reflected in the December 2006 are not binding, and in fact, as to those grounds for relief as to which the Petitioner presented

5

evidence at the May 19 hearing, the court assesses *de novo* whether Petitioner's evidence is sufficient to overcome the State's motion to dismiss.

It should be noted that Petitioner's evidence at hearing did not address all of the grounds listed in the amended petition, and that his offer of proof essentially repeated the offer made in his April 2006 filing. As to grounds not addressed by the Petitioner's evidence at hearing, there is no reason to disturb or even revisit the court's conclusions as set forth in its December 2006 order.

The two-step analysis that applies to a petition for post-conviction review alleging ineffective assistance of counsel calls for the court initially to determine "whether there has been serious incompetenc[e], inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney. . ." Francis v. State, 2007 ME 148, ¶4, 938 A.2d 10, 11, *quoting* McGowan v. State, 2006 ME 16, ¶11, 894 A.2d 493, 496-97. The second question is "whether the attorney's performance 'likely deprived the defendant of an otherwise available substantial ground of defense' or 'likely affected the outcome of the [proceeding].'" Francis v. State, *supra*, 2007 ME 148, ¶4, 938 A.2d at 11, *quoting* McGowan v. State, 2006 ME 16, ¶¶11-13, 894 A.2d at 497. Maine law tracks federal law in this regard. *See id.*

The United States Supreme Court has said that the petitioner's burden on claims of ineffective assistance of counsel is to show that ""there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See* Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

With that framework in mind, this decision proceeds to examine each of the grounds on which the Petitioner seeks relief based on ineffective assistance of counsel.

Analysis

*Ground 1(a)*

-- *Doctor Testimony:* The December 2006 order addressed the proposed testimony of a doctor regarding Mr. Mann's level of concern for Mr. Sears, the victim, and nothing in Petitioner's evidence related to that issue. There is no reason to disturb the court's prior conclusion that Petitioner has not proved that such evidence had such potentially probative value that its exclusion likely affected the outcome.

-- *Chaplain Testimony:* At hearing the Petitioner renewed his argument regarding the proposed testimony of a hospital chaplain to the effect that Carolyn Fish, a witness, told him that the victim was hurt by falling down some stairs. This was in fact Ms. Fish's initial account as given to police, so the chaplain's testimony that she told him the same tale would be cumulative and, to quote the December 2006 order, "adds little to the impeachment picture." Petitioner has not shown that the proffered evidence had such additional probative value that it could have had any effect on the outcome.

-- Broken *Chair Evidence:* Petitioner argues that attorney Smith should have objected to the admission into evidence of a broken chair. The court's December 2006 order noted any such objection would have been fruitless and that "no motion in limine was warranted." As also noted in the order, Defendant had the opportunity to provide, and did provide, his explanation for the condition of the chair. The May 19 hearing did

7

not add anything to Petitioner's proof, and therefore the conclusion must be that he has not met his burden on this issue.

-- *Missing Evidence of Defendant's Hair and Pots and Pans: At* the May 19 hearing, Petitioner testified that attorney Smith was remiss in failing to take steps to preserve and obtain two pieces of physical evidence: what the Defendant described as a significant swatch of his hair pulled out by Mr. Sears in the course of their altercation, and a pan that Petitioner claims was discarded by Carolyn Fish, along with other pots and pans, to conceal evidence that she had struck Mr. Sears with the pan while he was in bed after the altercation.

However, at the May 19 hearing Petitioner acknowledged that both the hair and the pan had been discarded into a dumpster. The police searched the dumpster soon after the incident and retrieved some items, but not the hair and not the pots and pans. The contents of the dumpster not removed by the police are unaccounted for, but presumably went to a landfill or incinerator. Petitioner has not shown how attorney Smith could possibly have done anything to obtain or preserve items that presumably were disposed of months before he became involved in the case.

For this reason, the court concludes that Petitioner has not met his burden to show any deficiency in attorney Smith's performance with respect to Ground 1(a).

Ground 1(b)

Petitioner alleges that three witnesses and the victim all had some criminal history that attorney Smith should have elicited at trial for various purposes. The December 2006 order rejected Petitioner's claim on the basis that he had not actually

8

demonstrated the existence of any of the criminal history he claims should have been proffered.[1] His evidence at the May 19 hearing did not remediate that shortcoming.

Thus, there is no basis on which this court could conclude that the alleged convictions would have qualified for admission into evidence under M.R. Evid. 609 or otherwise, or that their omission from the evidence likely affected the outcome of trial or deprived Petitioner of a substantial ground of defense. Accordingly, the court concludes Petitioner has not met his burden on these grounds.

Next, the Petitioner argues that the retained private investigator, Victor Kraft, was unproductive. Mr. Kraft testified at hearing. It is true that some of his efforts were unproductive, but it was not shown this was his fault. He did locate some individuals that Mr. Smith and Petitioner wanted interviewed, but they declined to speak with him. The evidence did not reveal any particular shortcoming in Mr. Kraft's efforts, and nothing that reflects lack of diligence or competence on the part of attorney Smith.

Lastly as to this ground, Petitioner claims that attorney Smith dedicated insufficient time to meeting with him, and claims that additional meeting time would have helped in the areas of trial preparation and sentencing. Attorney Smith met with Petitioner on three occasions for trial preparation, including a 'dress rehearsal' that inferentially involved a thorough run-through of Petitioner's anticipated testimony. Mr. Smith also went searching for potential witnesses himself in an area frequented by the homeless, as part of his pretrial preparation. Petitioner did not establish that

---

[1] The December 2006 order also notes that neither the alleged arrest warrant for one witness nor another witness's assault conviction would be admissible for impeachment purposes under Rule 609.

9

attorney Smith's trial preparation with Petitioner was inadequate, or that additional time would have made much of a difference.

As to sentencing, attorney Smith did discuss both Petitioner's presentation and the presentations of character witnesses on Petitioner's behalf. Attorney Smith dissuaded Petitioner from reading a statement at sentencing in which Petitioner maintained his innocence and placed blame elsewhere, as he did at trial. According to Petitioner, Mr. Smith advised him that, unless he were prepared to accept responsibility for the offense and express remorse, "the less said, the better." Consistent with that advice, Petitioner limited his remarks to saying he was sorry Mr. Sears was dead. Sentencing Hearing Transcript p. 16, lines 7-9.

The Petitioner obviously was entitled to say whatever he pleased at his sentencing, but his plan to repeat the protestations of innocence that the jury had already heard and rejected would hardly have helped his cause. Attorney Smith's suggestion that Petitioner not rehash his denial of responsibility and keep his own comments brief was, in context, prudent advice.

Petitioner's specific criticism of attorney Smith's efforts in connection with sentencing was that Petitioner's work history was not presented, at least in any detail. Petitioner said he felt portrayed as "an unproductive member of society" because he happened to be a transient at the time of the crime. Nothing in the proceeding indicates that Petitioner's transient status, or employment status or lack thereof was a major factor in sentencing, or that the inclusion of a detailed employment history would likely have mitigated the sentence imposed.

10

For these reasons, Petitioner has failed to meet his burden of proof with regard to the grounds alleged in section 1(b) of the amended petition.

*Ground 2(a)*

The allegations in section 2(a) of the amended petition all relate to failures to object to questions or portions of testimony. Petitioner's evidence at the May 19 hearing did not touch on any of these allegations, so there is no reason to revisit or alter the court's previous rulings in its December 2006 order. There is nothing to indicate that the lack of objections likely affected the outcome or deprived the Petitioner of a substantial ground of defense.

*Ground 2(b)*

This ground is withdrawn according to the Petitioner's April 2006 filing.

*Ground 3(a)*

All of the allegations encompassed in Ground 3(a) relate to the asserted failure of attorney Smith to gather and present information at sentencing regarding the Petitioner's work history and attainment of a GED, and to locate former employers or work associates to testify.

The evidence at hearing suggested that the probation officer who prepared the presentence report was unable to locate Donald Taylor, one of the persons Petitioner claims could have testified on his behalf at sentencing. There was no indication attorney Smith could have done any better. Attorney Smith did arrange for Mary Ellen O'Connell, who has had two children with Petitioner, to testify at sentencing and she spoke of Petitioner's qualities as a father. Sentencing Hearing Transcript at 14-16.

11

Petitioner has not shown that attorney Smith's efforts in these areas fell below the applicable standards of competence and diligence, or that the steps Petitioner argues should have been taken likely affected the outcome. Accordingly, the conclusion must be that Petitioner has not met his burden of proof on this ground.

*Ground 3(b)*

The Petitioner's April 2006 filing indicates this ground has been withdrawn.

*Ground 4(a)*

In this ground, the Petitioner argues that attorney Smith should have pursued on appeal his objections to four adverse rulings of the trial justice, denying a mistrial motion; admitting autopsy photographs over objection[2]; denying a motion to exclude the report of the presentence investigation, and a ruling on testimony. This is not a situation in which counsel is alleged to have failed to object initially. In fact, the record reflects that attorney Smith made appropriate arguments and objections before the trial justice. *See e.g.,* Trial Transcript Vol. 1, p. 24 (argument on motion for mistrial); Dec. 1, 2003 Hearing on Motions Transcript at 1-5 (motion to strike presentence report).

All of the adverse rulings in question involve the exercise of discretion, and Petitioner has not demonstrated any likelihood that an appeal of any them would have had any substantial prospect of success. Also, attorney Smith explained that he elected not to pursue these arguments on appeal because they were so unlikely to be successful that they would have detracted from the force of the Petitioner's more substantial

---

[2]  The trial record indicates that only one photograph of the victim's injuries was admitted — one apparently taken at the hospital rather than in the course of an autopsy.   *See* State's Ex. 23.  The court overruled Attorney Smith's Rule 403 objection to admission of the exhibit.   Trial Transcript vol. 3, at 31.

12

argument regarding jury instructions on appeal.[3]  That decision reflected a legitimate exercise of strategic judgment on the part of attorney Smith, and in any event there is nothing to indicate that the omission of these points likely affected the outcome of Petitioner's appeal.

This court is unable to determine the extent to which attorney Smith consulted with Petitioner regarding the issues to be pursued on appeal.   It is possible that Petitioner did not completely understand attorney Smith's thought process and exercise of judgment in determining what issues to press on appeal.  However, any lack of communication during the appeals process does not reflect on attorney Smith's competence and did not affect the outcome.

### Ground 4(b)

This ground essentially incorporates by reference Petitioner's argument regarding issues on appeal, and does not raise additional issues.   Accordingly, there is no occasion to revisit the court's prior conclusion in its December 2006 order that Petitioner has failed to demonstrate he is entitled to relief on this ground.

### Conclusion

Because the Petitioner has failed to prove that he is entitled to post-conviction relief on any of the grounds raised in his Amended Petition or at the hearing, the State's motion to dismiss is granted, and the Amended Petition is dismissed.

Dated June 2, 2008

_____
Justice, Superior Court

---

[3]  Attorney Smith's efforts on appeal nearly resulted in Petitioner's conviction being vacated; it was affirmed by a 4-3 vote of the seven justices sitting. *See State v. Mann,* 2005 ME 25, 868 A.2d 183.

13

BRUCE MANN VS STATE OF MAINE

CR-2005-541

ATTORNEY FOR THE STATE

Lisa Marchese Asst. A G
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA   ME   04333


ATTORNEY FOR THE PETITIONER

William Pagnano ESQ
431 MAIN ST
ROCKLAND   ME   04841